CITY OF MILWAUKEE, Respondent, vs. RICHARDS, Appellant.

*March 11—April 5, 1955.*

For the appellant there was a brief by *Dorsey & Coggs* of Milwaukee, and oral argument by *James W. Dorsey*.

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Robert D. Sullivan,* assistant city attorney, attorneys, and *John F. Cook,* assistant city attorney, of counsel, and oral argument by *Mr. Sullivan* and *Mr. Cook.*

FAIRCHILD, C. J.   On November 7, 1952, appellant was observed by two police officers to be driving on North Fourth street in the city of Milwaukee in excess of the speed limit, or at 39 m.p.h. in a 25 m.p.h. zone. The officers ordered him to stop. He did so, and after the officers had talked to him, they concluded from his manner of acting that he was under the influence of intoxicating liquor and placed him under arrest. He was then taken to the police station where a urinalysis was made one-half hour after the arrest. The results of this analysis showed twenty-six hundredths of one per cent by weight of alcohol content, which corresponds to at least nineteen hundredths of one per cent by weight of alcohol in the blood. Within forty-five minutes of his arrest physical tests were conducted at the police station. The results of such tests showed, among other things, that appellant spoke incoherently or in a slurred manner, that he staggered or was unsteady on his feet, that he was unable to pick up a coin, that he was unable to perform a finger-to-nose test, and that otherwise he reacted in a manner easily recognizable as that of a person under the influence of intoxicating liquor. These facts are established by the stipulation in writing between appellant and respondent.

The stipulation further establishes that when the officers observed the actions of the appellant while driving his automobile, he did not demonstrate an appreciable interference with his ability to drive a motor vehicle with ordinary care in

that there was no bizarre or erratic driving other than speeding.

Appellant was charged with operating an automobile while under the influence of intoxicating liquor in violation of sec. 101–8 of the Milwaukee Code of Ordinances, which makes it "unlawful for any person . . . who is under the influence of an intoxicating liquor . . . , to operate any vehicle upon any highway." This section is substantially in the wording of sec. 85.13, Stats. 1951, which provides in part:

"85.13 (1) It shall be unlawful for any person . . . who is under the influence of an intoxicating liquor . . . to operate any vehicle . . . upon any highway.

"2. Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle while under the influence of intoxicants, the court may admit evidence of the amount of alcohol in the defendant's blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of such defendant's breath, blood, urine, or saliva. For the purposes of this section: (a) Evidence that there was, at the time five-hundredths of one per cent or less, by weight of alcohol in his blood, is *prima facie* evidence that the defendant was not in an intoxicated condition; (b) evidence that there was, at the time, more than five-hundredths of one per cent and less than fifteen-hundredths of one per cent by weight of alcohol in his blood is relevant evidence, but it is not to be given *prima facie* effect in determining whether or not the defendant was in an intoxicated condition; *(c) evidence that there was, at the time, fifteen-hundredths of one per cent or more, by weight of alcohol in his blood, shall be admitted as prima facie evidence that the defendant was in an intoxicated condition, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the defendant guilty of being under the influence of intoxicants."* (Emphasis supplied.)

A reading of the above-italized portion of the statute, sec. 85.13 (2) (c), makes it clear that inasmuch as the alcoholic content by weight in appellant's blood was more

than fifteen hundredths of one per cent, *prima facie* evidence is established that the defendant was in an "intoxicated condition." Such evidence, together with the corroborating physical evidence of his abnormal reactions to the physical tests and his actions at the time of his arrest, is sufficient to find him "guilty of being under the influence of intoxicants." There is no question about appellant's having indulged. In effect, it is stipulated in the recital of facts that he had in his blood an alcoholic content in excess of the amount designated by statute to establish *prima facie* evidence of his being in an "intoxicated condition," that his physical actions at the time of his arrest and his performance of physical tests "were those of a person who was under the influence of intoxicating liquor," and that he was driving an automobile on the highway.

It is respondent's contention that it is necessary to prove only two elements to show a violation of the above ordinance and statute: (1) That the person charged was operating a vehicle on the highway; and (2) that he was under the influence of intoxicating liquor. The evidence referred to has met the proof of these two elements.

Appellant contends, however—and this is the only issue on this appeal—that a third element must be proved, namely, that the intoxicating liquor consumed by the person charged with violation of the ordinance or statute *shall appreciably interfere with his operation of a vehicle on the highway.* Appellant calls attention to the fact that it was stipulated that appellant "did not demonstrate an appreciable interference with his ability to drive a motor vehicle with ordinary care in that there was no bizarre or erratic driving other than speeding," and relies on the cases of *Steinkrause v. Eckstein,* 170 Wis. 487, 175 N. W. 988, and *People v. Dingle,* 56 Cal. App. 445, 205 Pac. 705, a California case which quotes from *Bakalars v. Continental Casualty Co.* 141 Wis. 43, 122 N. W. 721.

In the *Steinkrause Case,* the court stated (p. 491):

"On the first question, no precise definition of what is intoxication is made by the statute, nor will we undertake in that behalf to do more than say that it is evidently intended that the fact must appear that the driver's indulgence in the use of intoxicating liquors was such as to result in an appreciable interference with the exercise by him of ordinary care in the management of such vehicle."

In the *Dingle Case,* it was held (pp. 448, 449):

"The field, therefore, is open for construction to ascertain just what degree or kind of 'influence' is within the purview of the statute.

"We shall not assume to give any complete or all-inclusive definition of these words of the statute. We shall not undertake to express with precision the exact constituent ingredients of the word 'influence' as employed in this act. However, with respect to the meaning of the phrase 'under the influence of intoxicating liquor,' as used in this statute, we think we are well within the bounds of accuracy in saying that if intoxicating liquor has so far affected the nervous system, brain, or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is 'under the influence of intoxicating liquor' within the meaning of the statute."

It is to be noted that in those cases the courts were attempting to construe the language "intoxicated" and "under the influence of intoxicating liquor," in the absence of any statutory guide. Furthermore, in those cases, the facts showed that there *was* an appreciable interference with the driver's operation of a vehicle on the highway. From the result it necessarily must have been concluded that the condition of the driver was such that the term "intoxicated" or "under the influence of intoxicating liquor" was properly applied.

But that is not to say that there might not be less extreme indications to which those same terms might also be applied.

A brief review of the legislative history of the drunken-driving laws in the state of Wisconsin will show the tendency of the legislature to move further away from the restricted sense of the term "intoxicated" and finally to furnish a statutory guide for the construction of the statute involving intoxicants when used by one operating a vehicle upon a highway. The drunken-driving law as originally enacted, and up to 1929, employed the phrase "while intoxicated" to describe a person coming under its provisions. In 1929, the legislature, by ch. 454, Laws of 1929, repealed the old statute and created in its stead sec. 85.13, Stats. In the language of the new statute, a person is prohibited from operating any vehicle upon any highway "while under the influence of intoxicating liquor." This change indicates that the legislature, with increasing awareness of the importance of safety in the operation of dangerous instruments on the highway, extended the prohibitions from persons who would come under the restricted category of absolute intoxication to those persons whose reactions would show that they were merely "under the influence of intoxicating liquor."

In an analogous Arizona case, *Hasten v. State,* 35 Ariz. 427, 430, 280 Pac. 670, the court said:

"Our legislature, it will be seen, required at first that the offender should be under the influence of liquor to the point of actual intoxication, but evidently became convinced that many persons who had not yet arrived at that state were a menace to public safety when driving a motor vehicle, and in order so far as possible to remove danger from an admixture of liquor and gasoline provided that any person 'influenced' by the former, without specifying the extent to which such influence must go, must himself abstain from using the latter in a motor vehicle."

Further, in 1949, because of the difficulty of courts in establishing the condition of intoxication, and to clarify the meaning of the statutory language "under the influence of intoxicating liquor," our legislature added sub. (2) to sec. 85.13, Stats., as set out above, which stated the relation of specified amounts of alcohol in the blood to intoxication and described the evidence necessary to find a person guilty of being "under the influence of intoxicants." This court is therefore no longer in the same position as it was when it decided the *Steinkrause Case,* at which time there was a lack of statutory definition.

From sec. 85.13 (2), Stats. 1951, it is clear that if a person has a specified alcoholic content in his blood and corroborating physical evidence is established, he is "under the influence of intoxicants." And if he is operating any vehicle on any highway while he is under the influence of liquor, he is doing so in violation of the law. It is not necessary to show that damage resulted from the operator's condition or that he drove in a bizarre or erratic manner. As stated in an analogous case, *State v. Peckham,* 263 Wis. 239, 242, 56 N. W. (2d) 835, "The stipulation provides also 'that there is no testimony that the accident resulted from any lack of due care on the part of the defendant, . . . or resulted from the fact that the defendant . . . was under the influence of intoxicating liquor.' No such testimony is necessary. The case is ruled on this point by the case of *State v. Resler,* 262 Wis. 285, 290, 55 N. W. (2d) 35, which holds that in a prosecution under sec. 340.271 (1), the state is not required to prove 'that defendant's operation of the car was so affected by his intoxication that the accident would not have happened if he had been sober.' " See also *Tomasik v. Lanferman,* 206 Wis. 94, 238 N. W. 857.

The contention of the appellant that there must be proof of a third element, namely, that the operation of a driver of

an automobile must show appreciable interference due to his being under the influence of intoxicating liquor, must therefore fall. It remains, then, that the only two elements involved in proving a person guilty of violating the code, or statute, making it unlawful for a person to operate a vehicle upon any highway while he is under the influence of liquor, are: (1) That he be operating a vehicle on the highway; and (2) that he be under the influence of intoxicants. If an operator is driving a vehicle on the highway and is under the influence of intoxicants within the definition of sec. 85.13 (2), Stats. 1951, he is violating the law as soon as he sets his car in motion on the highway. For decisions on this matter in other jurisdictions, see *McMurry v. State,* 28 Ala. App. 253, 184 So. 42; *State v. Rodgers,* 91 N. J. L. 212, 102 Atl. 433; Anno. 142 A .L. R. 557; *Owens v. Commonwealth,* 147 Va. 624, 136 S. E. 765, 766; *Commonwealth v. Buoy,* 128 Pa. Super. Ct. 264, 193 Atl. 144, 145; *State v. Tacey,* 102 Vt. 439, 150 Atl. 68, 70; *State v. Dale,* 66 S. D. 418, 284 N. W. 770, 771; *People v. Domagala,* 123 Misc. 757, 206 N. Y. Supp. 288; Anno. 42 A. L. R. 1502; *State v. Webb,* 202 Iowa, 633, 210 N. W. 751.

We therefore consider that appellant was guilty of violating the ordinance of the code of the city of Milwaukee in question, and the judgment of the municipal court must be affirmed.

*By the Court.*—Judgment affirmed.