City of Madison, Plaintiff-Appellant,
v.
Vincent N. Spruill, Jr., Defendant-Respondent.
No. 03-2296.
Court of Appeals of Wisconsin.
Opinion Filed: August 26, 2004.
¶1 DYKMAN, J.[1]
The City of Madison appeals from an order granting Defendant Vincent Spruill's motion to suppress. It asserts that Madison Police Officer Alexander M. Berkovitz had reasonable suspicion to initiate an investigative stop based on his observations of Spruill's driving behaviors and the time of day. We affirm the decision because the record before us lacks specific, articulable facts necessary to support an objective inference that the officer's stop was based on reasonable suspicion.

BACKGROUND
¶2 The parties stipulated to the contents of the arresting officer's report and the officer's training as the evidentiary bases for the circuit court to decide the motion to suppress. The report states that at approximately 2:16 a.m. on January 16, 2003, Officer Berkovitz observed a vehicle driving southbound "closely behind" another vehicle on Park Street. Officer Berkovitz followed the vehicle and saw it "veering from left to right within the right lane of Park Street." Officer Berkovitz noted that the vehicle followed "awfully close" to the car in front of it. The vehicle then "veered southbound onto Fish Hatchery Road" from Park Street. Officer Berkovitz followed and observed the vehicle again "veer to the left and to the right within its lane."
¶3 As the vehicle approached the intersection of Fish Hatchery Road and Emil Street, Officer Berkovitz saw it "make a right-hand turn onto Emil Street without coming to a full stop or signaling right." The vehicle then immediately turned left onto Damon Road. Throughout the officer's observation of the vehicle, it continued to follow another vehicle "extremely closely." Officer Berkovitz pulled the vehicle over in the 2600 block of Damon Road. Prior to approaching the vehicle, Officer Berkovitz ran a record check on the license plate and found that it had expired in October 2002. Officer Berkovitz then contacted the driver, and identified him as Vincent Spruill, Jr. Officer Berkovitz smelled a strong odor of intoxicants inside the vehicle. The officer asked Spruill if he would perform some field sobriety tests, and Spruill consented. When Spruill failed the tests, Officer Berkovitz issued him two citations for first-offense Operating a Motor Vehicle While Intoxicated and Operating with a Prohibited Alcohol Concentration.
¶4 Spruill filed a motion to suppress the chemical breath test and postarrest statements to police, and challenged probable cause to arrest. At the evidentiary hearing, Spruill asserted that Officer Berkovitz also lacked reasonable suspicion for the traffic stop. The circuit court granted the motion to suppress, finding that the officer lacked reasonable suspicion for the traffic stop. The City appeals.

STANDARD OF REVIEW
¶5 Spruill argues that the circuit court drew a reasonable inference from the facts, and that we must accept this inference because more than one reasonable inference may be drawn from the undisputed facts before us. See Pfeifer v. World Service Life Insurance Co., 121 Wis. 2d 567, 571, 360 N.W.2d 65 (Ct. App. 1984). However, this case requires us to apply constitutional principles to the facts, a matter of law that we review de novo. State v. Jackson, 147 Wis. 2d 824, 829, 434 N.W.2d 386 (1989). Additionally, the record before us consists entirely of documentary evidence. Where the evidence is documentary, we are as equally competent as the circuit court to interpret such evidence. Frito-Lay, Inc. v. So Good Potato Chip Co., 540 F.2d 927, 930 (8th Cir. 1976). The standard of review is therefore de novo. Id.

DISCUSSION 
¶6 The City argues that Officer Berkovitz had reasonable suspicion to make the initial traffic stop based on Spruill's driving behaviors and the time of day. An investigative stop is subject to the Fourth Amendment's requirement that all searches and seizures be reasonable. Terry v. Ohio, 392 U.S. 1, 20-22. An officer must be able to point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Id., 392 U.S. at 21. The standard is the same under article 1, section 11 of the Wisconsin Constitution. State v. Harris, 206 Wis. 2d 243, 258, 557 N.W.2d 245 (1996). The question of what constitutes reasonable suspicion is a commonsense test: given the facts and circumstances, what would a reasonable police officer reasonably suspect in light of his or her training and experience? Jackson, 147 Wis. 2d 824 at 834.
¶7 Our review is limited to the contents of the police report, the record stipulated to by the parties. We agree with the circuit court that too much information is missing from the report to support a reasonable suspicion that Spruill's driving behaviors were unusual or erratic. This is critical because an investigative stop is presumptively unconstitutional. Terry, 392 U.S. at 16.
¶8 The Madison Police Department's policies and procedures manual states that "a report is needed to include all available information" when making a traffic arrest. MADISON, WIS., POLICE POLICY MANUAL, §11-100 (2001). It also requires that police reports be "understandable, accurate and concise." Id. Here, the police report lacks such key facts as Spruill's speed, the applicable speed limit and road and traffic conditions.
¶9 Furthermore, the report lacks the specificity required to demonstrate that the officer had a reasonable suspicion. First, it states twice that Spruill followed another vehicle "awfully close" and "extremely closely." It also states that Spruill followed another vehicle "extremely closely" during the entire observation. This would have been unusual driving behavior only if Spruill had followed another vehicle "more closely than is reasonable and prudent having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." WIS. STAT. § 364.14(1). Absent more information, we cannot determine if Spruill's following distance was unreasonable, imprudent, or how it factored into a reasonable suspicion analysis.
¶10 Secondly, the report states that Spruill made two right turns without coming to a full stop or signaling at Fish Hatchery Road.[2] However, a signal is required only when other traffic is present that could be affected by the turn. WIS. STAT. § 346.34. Failure to give a right-hand turn signal is not a traffic violation unless other traffic was affected. Milwaukee v. Johnston, 21 Wis. 2d 411, 413, 124 N.W.2d 690 (1963). The report does not indicate whether there were other cars on the road. Moreover, there is no indication that the operation of the officer's vehicle was affected by the unsignaled turn. We do not know whether intoxicated drivers are more likely to fail to signal where a signal is required. Thus, without this critical information, it is not possible to conclude that Spruill's turning was unusual or erratic.
¶11 The City contends that failure to signal should be sufficient to support a finding of reasonable suspicion, citing Johnston, 21 Wis. 2d 411. But the Johnston court said: "Standing alone, driving the wrong way on a one-way street and failure to signal a turn are not indicative of driving under the influence of liquor." Id. at 413.
¶12 Thirdly, the report states that Spruill's vehicle veered from left to right within its lane on Park Street and Fish Hatchery Road. This driving behavior may be usual depending on the road situation and the frequency. Movement within one lane is not a per se violation giving rise to reasonable suspicion. Inconsequential movement within a lane does not give law enforcement the authority to make an investigative stop. State v. Hodge, 771 N.E.2d 331, 338 (Ohio Ct. App. 2002). We do not know how many times the vehicle moved within its lane and the distance of the deviation.
¶13 The City asserts that this case is similar to another case in which the court found reasonable suspicion. See State v. Waldner, 206 Wis. 2d 51, 556 N.W.2d 681 (1996). In Waldner, an officer observed a vehicle accelerate suddenly from an intersection. Id. The vehicle then came to a stop, at which point the driver's car door opened and the driver poured onto the road an apparent mixture of liquid and ice from a plastic cup. Id. The court held that the officer's investigative stop was based on facts that, taken together, gave rise to a reasonable suspicion that the subject could have been intoxicated. Id. at 58. However, the officer's report in Waldner contained specific, articulable facts on which to justify the stop, including that the subject's car reached twenty to twenty-five miles per hour in "several seconds," and the appearance of the drink. Id. Here, the police report contains comparatively little detail.
¶14 The City also asserts that the court should give weight to the fact that the stop occurred around bar time. Time is a factor we consider in reviewing the totality of the circumstances. State v. Flynn, 92 Wis. 2d 427, 435, 285 N.W.2d 710 (1979). However, it is only one factor, and without more it is insufficient to provide an objective basis for a reasonable suspicion. Furthermore, because driving itself is an otherwise innocent activity, this factor should be afforded relatively little weight. See State v. Young, 212 Wis. 2d 417, 429-430, 569 N.W.2d 84 (Ct. App. 1997) (holding that a brief contact with another person in a high-crime neighborhood was otherwise innocent behavior that large numbers of law-abiding citizens exhibit and therefore did not give rise to reasonable suspicion).
¶15 Finally, the City contends that we should consider the fact that Spruill's registration was expired. We disagree. Seizure occurs when the liberty of a citizen is in some way constrained by means of physical force or show of authority. Terry, 392 U.S. 1 at 20 n.16. A police stop on a roadway is a seizure. The police report shows that the officer learned of Spruill's license violation only after stopping Spruill's vehicle. Therefore, evidence that Spruill's registration had expired was gathered after the seizure and must be excluded from our inquiry.

CONCLUSION
¶16 In sum, the absence of specific, articulable facts leads us to conclude that the record before us does not provide a basis on which to draw a reasonable inference that Officer Berkovitz had reasonable suspicion to justify the investigative stop. We therefore affirm.
By the Court.  Order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2003). All references to the Wisconsin Statutes are to the 2003 version unless otherwise noted.
[2] The record does not show whether the intersections where Spruill turned had stop signs.