STATE of Wisconsin, Plaintiff-Respondent,

v.

David A. WAALEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 84–2133–CR. Argued April 2, 1986.—Decided April 30, 1986.*

(Also reported in 386 N.W.2d 47.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Steven D. Phillips,* first assistant state public defender.

For the plaintiff-respondent the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

A joint amicus curiae brief was filed by *William A. Pangman* and *John G. Shannon,* Waukesha and *James P. Gerlach* and *Larowe & Gerlach,* Reedsburg, for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Steven Levine,* Middleton, for the Mothers Against Drunk Driving, Dane County Chapter.

CALLOW, WILLIAM G., J.  David A. Waalen, the defendant, seeks review of a published decision of the court of appeals, *State v. Waalen,* 125 Wis. 2d 272, 371 N.W.2d 401 (Ct. App. 1985), affirming a judgment of conviction and an order denying a motion for a new trial of the circuit court for Polk county, Judge James C. Eaton, presiding. A jury convicted Waalen of operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., 1981–82.

The only issue revolves around whether the circuit court properly instructed the jury regarding the definition of "under the influence." Waalen argues that the court erred in instructing the jury because the language the court used to describe "under the influence" differs from the language used to define "under the influence" in the current standard jury instruction, Wis. JI—Criminal 2663 (1982), and in the Criminal Code, sec. 939.22(42). Because we find no error in the court's instruction defining "under the influence," we affirm the decision of the court of appeals.

Waalen was involved in a motorcycle accident in Polk county on or about May 28, 1982. As a result of the accident, Waalen was charged with operating a vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1), Stats., 1981–82. [All references in this opinion are to the 1981–82 Statutes unless otherwise indicated.] This case was tried to a jury on March 7, 1984.

At the trial Deputy John R. Harvieux of the Polk County Sheriff's Department testified that when he arrived at the scene of the accident, Waalen identified himself as the driver of the motorcycle and admitted that he had been drinking. Deputy Harvieux also noted that Waalen's eyes were red-rimmed and bloodshot and that Waalen's breath had a moderate odor of an alcoholic beverage. Deputy Harvieux further stated that Waalen was taken by ambulance to a hospital for treatment of his injuries. At the hospital he consented to a blood test. When tested at the State Laboratory of Hygiene, the blood sample drawn at the hospital indicated a blood alcohol concentration of .135 percent.

Waalen testified that he had only four and one-half beers the night of the accident—one 12-ounce can

and three and one-half 8-ounce cups. He stated that in his opinion he was not under the influence. He blamed the accident on a hit-and-run driver.

At the conference on jury instructions, the court informed both parties that it would not give the standard jury instruction for operating while under the influence of an intoxicant, Wis. JI—Criminal 2663 (1982), but rather would modify that portion of the instruction which defines "under the influence." Waalen objected to the modification and urged the court to use the language from the standard jury instruction.

The standard jury instruction provides as follows:

> " 'Under the influence' of an intoxicant means that a driver's ability to operate a vehicle is materially impaired because of his consumption of an alcoholic beverage.[6]
>
> "Not every person who has consumed alcoholic beverages is 'under the influence' as that term is used here. What must be established is that the person has consumed a sufficient amount of alcohol to cause him to be substantially less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.
>
> "It is not required that impaired ability to operate be demonstrated by particular acts of unsafe driving. What is required is that the person's ability to safely control his vehicle be materially, that is substantially, impaired." Wis. JI—Criminal 2663 (1982).

Comment 6 to the standard instruction states that the Criminal Jury Instructions Committee gave "under the influence" the same definition found in sec. 939.22(42) of the Criminal Code because the phrase was "not separately defined in the Motor Vehicle Code and [because]

21

the Committee concluded that the same definition should apply to all crimes involving 'under the influence.' " Wis. JI—Criminal 2663, Comment 6 (1982).

The circuit court concluded, however, that no statutory basis existed for requiring "material impairment." Therefore, the court deleted the above-quoted language from the instruction and inserted the following language:

> "The phrase 'under the influence of an intoxicant' covers not only the well-known and easily recognized conditions and degrees of intoxication but also any abnormal mental or physical conditions which [are] the result of indulging in any degree in intoxicating liquors, including beer, which tends to deprive one of the clearness of intellect and self control which one would otherwise possess.
>
> "Not every person who has consumed alcoholic beverages falls within the ban of the statute. If that consumption of alcoholic beverages does not cause the person to be influenced in the ordinary and well-understood meaning of the term, the person is not under the influence of an intoxicant within the meaning of the statute."

This instruction was based largely upon the 1981 version of the standard jury instruction. *See* Wis. JI—Criminal 2663 (1981). The court further instructed the jury that a blood test sample indicating a blood alcohol concentration greater than 0.1 percent serves as prima facie evidence that the defendant was under the influence. The jury found Waalen guilty of operating a vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats. The circuit court entered a judgment of conviction and denied Waalen's motion for a new trial.

The court of appeals affirmed the circuit court judgment. The court noted that to prove a violation of driving while under the influence the state need not show that consumption of an intoxicant appreciably interfered with a defendant's ability to drive. *State v. Waalen,* 125 Wis. 2d at 274–75 [citing *State v. Gaudesi,* 112 Wis. 2d 213, 221, 332 N.W.2d 302 (1983); *Milwaukee v. Richards,* 269 Wis. 570, 576–77, 69 N.W.2d 445 (1955)]. Because the court equated "material impairment" of a person's ability to drive with "appreciable interference" with a person's ability to drive, it concluded that proof of a "material" or "substantial" impairment of a defendant's ability to drive is not required to convict someone of driving under the influence. *Id.* at 275. The court held that the definition of "under the influence" contained in the Criminal Code should not be applied to Motor Vehicle Code violations. While the court believed that this approach resulted in two different definitions of "under the influence," one in the Criminal Code and one in the Motor Vehicle Code, it believed that any inconsistency was a matter appropriate for legislative redress, rather than judicial activism. *Id.*

Waalen's challenge to the court of appeals' decision is predicated largely upon two arguments. While he agrees with the court of appeals' conclusion that the circuit court's definition of under the influence differs substantively from the definition contained in the standard jury instruction, which is derived from sec. 939.22(42), Stats., he argues that it is illogical to define "under the influence" inconsistently in different contexts. He maintains that to prove a defendant was "under the influence," the state must prove that the

23

consumption of alcohol "materially" or "substantially" affected the defendant's ability to drive.

The state counters Waalen's argument by conceding that "under the influence" has a different meaning in the Motor Vehicle Code than in the Criminal Code. The state asserts, however, that the legislature intended the phrase to have different meanings and that rational policy justifications support the existence of different meanings. It urges this court to disregard the current standard jury instruction, which employs the definition of "under the influence" found in the Criminal Code, because it believes that Criminal Code definitions cannot be used outside the Criminal Code. Rather, the state encourages the court to affirm the instruction the circuit court gave in this case. It maintains that "under the influence," as used in the Motor Vehicle Code, requires only proof that consumption of intoxicants tends to deprive a person of the clearness of intellect and self-control which one would otherwise possess.

■ To determine the propriety of the instruction in this case, we must construe sec. 346.63(1)(a), Stats., to give the proper definition to the phrase "under the influence." The construction of a statute is a question of law. This court need not defer to the lower courts when deciding a question of law. *Milwaukee Metropolitan Sewerage District v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 648 (1985). In construing a statute, the court first must resort to the language of the statute itself. The court should examine the scope, history, context, subject matter, and object of the statute to discern legislative intent only when the language of a statute is ambiguous or unclear. *Id.*

24

Section 346.63(1)(a), Stats., prohibits operating a vehicle while "under the influence" of an intoxicant. In addition, sec. 346.63(1)(b), prohibits a person from operating a vehicle with a blood alcohol concentration of 0.1 percent or more by weight. Although the Motor Vehicle Code did not contain a more precise definition of "under the influence" at the time this case was initially tried, our case law offers some insight into the language appropriate for instructing a jury regarding the definition of "under the influence."

In *Fond du Lac v. Hernandez*, 42 Wis. 2d 473, 167 N.W.2d 408 (1969), the trial court instructed the jury as follows:

> " 'The expression "under the influence of an intoxicant" covers not only all the well-known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, including beer, and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess.
> " 'A person who is even to the slightest extent under the influence of an intoxicant in the common and well-understood acceptation of the term is—to some degree at least—less able either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern motor vehicle with safety to himself and the public. Not every man who has consumed alcoholic beverages falls within the ban of the statute. If that consumption of alcoholic beverages does not cause him to be influenced in the ordinary and well understood meaning of the term, he is not under the influence

25

of an intoxicant within the meaning of the statute or ordinance in this particular case.' " *Id.* at 475–76.

We rejected Hernandez's challenge to the instruction, implicitly affirming the validity of the language of the instruction. *Id.* at 477. As of 1981, the standard jury instruction for operating a vehicle while under the influence contained language virtually identical to that used in *Hernandez.*

Because the circuit court in the instant case instructed the jury using language almost identical to that used in *Hernandez* and in the 1981 version of the standard jury instruction, it would appear that our ruling in *Hernandez* controls our decision today. Waalen argues, however, that in light of the 1982 revision of the standard jury instruction by the Criminal Jury Instructions Committee, the circuit court erred in using the earlier instruction.

While we generally view the work of the Criminal Jury Instructions Committee as persuasive, *State v. Gilbert,* 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983), the Committee is not infallible. *State v. Beets,* 124 Wis. 2d 372, 383 n. 7, 369 N.W.2d 382 (1985). In this case the committee erred in attempting to fix something which was not broken. The committee revised the standard instruction in 1982 because it believed the then existing standard instruction was inconsistent with the Criminal Code's definition of "under the influence." The 1981 standard instruction on "under the influence," however, was and is entirely consistent with the Criminal Code definition of "under the influence."

■

The Criminal Code definition of "under the influence" requires the state to show that a person's ability to operate a vehicle is "materially impaired" because

of the consumption of an alcoholic beverage or controlled substance. Sec. 939.22(42), Stats. The committee believed that "materially impaired" was equivalent to "substantially impaired," and concluded that the existing standard instruction had to be revised to make the Motor Vehicle Code consistent with what it perceived to be the Criminal Code's requirement of "substantial impairment." The committee, however, cited no authority for defining "material" as "substantial."

"Material impairment" should not be given a definition that is inconsistent with the purpose of the statute, which is to foster highway safety. In the preface to the 1981 revisions of the Criminal Code, the legislature expressly stated that its purpose was to "provide maximum safety for all users of the highways of this state" from the harm threatened by persons who operate motor vehicles while under the influence of an intoxicant. Laws of 1981, ch. 20, secs. 2051(13)(a)1 and 2051(13)(b)1. *See State v. Caibaiosai,* 122 Wis. 2d 587, 591, 363 N.W.2d 574 (1985). Requiring "substantial impairment" of an individual's ability to operate a vehicle before that person could be found "under the influence" would be inconsistent with the expressed legislative intent because it would not provide maximum safety for all users of state highways. Rather, "material impairment" under sec. 939.22(42), Stats., exists when a person is incapable of driving safely, or " 'is without proper control of all those faculties . . . necessary to avoid danger to others.' " *Caibaiosai,* 122 Wis. 2d at 592 [quoting *Tomasik v. Lanferman,* 206 Wis. 94, 97, 238 N.W. 857 (1931)].

Notably, the legislature recently added language to sec. 346.63(1)(a), Stats., 1983–84. That section now prohibits operating a vehicle while under the influence

27

"to a degree which renders [the operator] *incapable of safely driving*." (Emphasis added.) With the addition of this phrase, the legislature has made it even more clear that the Motor Vehicle Code definition of "under the influence" is equivalent to the Criminal Code definition.

■ The circuit court's instruction to the jury in this case defined "under the influence" as any "abnormal mental or physical conditions . . . which tends to deprive one of the clearness of intellect and self control which one would otherwise possess." As noted earlier, this instruction uses language virtually identical to that approved in *Hernandez* and found in the 1981 version of the standard jury instruction. It is not inconsistent with the Criminal Code definition of "under the influence." Because operating a vehicle requires the use of mental and physical faculties, this instruction accurately describes the circumstances in which a jury can infer whether an operator's ability to operate a vehicle is "materially impaired" or when a driver is "incapable of safely driving." The circuit court properly instructed the jury in this case.

*By the Court.*—The decision of the court of appeals is affirmed.